nha 9336

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re                                                    Case No. 802-86399-478
                                                         Chapter 7

JOSEPH AND FRANCES VENTIMIGLIA,

                        Debtor.
-------------------------------------------------------------X

NEIL H. ACKERMAN, as Trustee of                          Adv. Proc. No.
the Bankruptcy Estate of JOSEPH AND
FRANCES VENTIMIGLIA

                    Plaintiff,

        -vs.-                                            **COMPLAINT**

JOSEPH VENTIMIGLIA, a/k/a JOSEPH
VENTIMIGLIA Sr., a/k/a JOSEPH R.
VENTIMIGLIA; FRANCES VENTIMIGLIA;
KAREN CARRAGHER; ROBERT M. CARRAGHER,
a/k/a ROBERT M. CARRAGHER, JR.;
CHRISTINA CARRAGHER; JOSEPH
VENTIMIGLIA, a/k/a JOSEPH
VENTIMIGLIA JR.; LINDA VENTIMIGLIA;
JACQUELINE VENTIMIGLIA; AND SARAH
VENTIMIGLIA,

                    Defendants.
-----------------------------------------------------------X

        Plaintiff, by his attorneys, Meltzer, Lippe Goldstein & Breitstone, LLP, as and for his

Complaint herein, respectfully shows and avers:

**a.  Jurisdiction and Parties**

        1.      This adversary proceeding arises under 11 U.S.C. Sections 105(a); 363(b), (f)

and (h);  542; 544; 548; and 550; New York Debtor and Creditor Law Sections 270-279 inclusive;

the doctrines of, and applicable law respecting, equitable lien and constructive trust; and Federal Rules

of Bankruptcy Procedure 6009 and 7001.

2.    This Court has jurisdiction over this adversary proceeding pursuant to 28

U.S.C. Sections 1334(a) and (b); and 28 U.S.C. Section 157 and the standing Order of the District

Court in this District, referring all bankruptcy cases filed herein and all matters arising in and under said

cases, and related thereto, to the Bankruptcy Judges of this District, as this adversary proceeding arises

in and under, and/or relates to the chapter 7 bankruptcy case (No. 802-86399-478) of  Joseph

Ventimiglia, a/k/a Joseph Ventimiglia Sr., a/k/a Joseph R. Ventimiglia and Frances Ventimiglia (the

"Debtors"), two of the Defendants herein.

3.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. Section

157(b)(2)(A), (E), (H), (N) and (O).

4.    The Debtors' bankruptcy case was commenced on September 6, 2002

(the "Filing Date"), by the Debtors' filing of a joint voluntary petition with this Court for relief under

chapter 7 of the United States Bankruptcy Code, 11 U.S.C. Sections 101-et seq.

5.    Plaintiff is the appointed and acting bankruptcy trustee in the

Debtors' chapter 7 case.  As such, Plaintiff is authorized to commence and prosecute this action for

and on behalf of the creditors and the bankruptcy Estate herein pursuant to 11 U.S.C. Section 323 and

Federal Rule of Bankruptcy Procedure 6009.

6.    Upon information and belief, the Debtors are individuals who reside or resided

at 59 Beaumont Avenue, Massapequa, New York 11758  (the "Beaumont Avenue Property.")

7.      Upon information and belief, the Defendants Robert M. Carragher a/k/a Robert M. Carragher, Jr. and Karen Carragher (separately, "Mr. Carragher" and "Mrs. Carragher"; and collectively, "the Carraghers") reside or resided at 59 Beaumont Avenue, Massapequa, New York 11758.

8.      Upon information and belief, the Defendant Christina Carragher ("Christina C.") resides or resided at 59 Beaumont Avenue, Massapequa, New York 11758.

9.      Upon information and belief, the Defendant Joseph Ventimiglia, a/k/a Joseph Ventimiglia Jr. ("Joseph Jr.") is a domiciliary of the state of New York and has or had an address and/or resides or resided at 27 Mildred Court, Nesconset, New York and/or 2225 Camp Avenue, Merrick, New York.

10.     Upon information and belief, the Defendant Linda Ventimiglia  ("Linda V.") was a domiciliary of the state of New York and has or had an address and/or resides or resided at 27 Mildred Court, Nesconset, New York and/or 2225 Camp Avenue, Merrick, New York.

11.     Upon information and belief, the Defendant Jacqueline Ventimiglia ("Jacqueline V.") is a domiciliary of the state of New York and has or had an address at 27 Mildred Court, Nesconset, New York and/or resides or resided at, 2225 Camp Avenue, Merrick, New York.

12.     Upon information and belief, the Defendant Sarah Ventimiglia  ("Sarah V.") is a domiciliary of the state of New York and resides or and has or had an address at 27 Mildred Court, Nesconset, New York and/or resides or resided at, 2225 Camp Avenue, Merrick, New York.

**b.  Factual Background**

13.     Upon information and belief, Mrs. Carragher is the Debtors' daughter, Mr. Carragher is the Debtors' son-in-law, and Christina C. is the Debtors' granddaughter.  Therefore, they are all insiders of the Debtors as that term is defined in the Bankruptcy Code.

14.     Upon information and belief, Joseph Jr. is the Debtors' son, Jacqueline V. and Sarah V. are the Debtors' granddaughters, and Linda V. is or was the Debtors' daughter-in-law. Therefore, they are all insiders of the Debtors as that term is defined in the Bankruptcy Code.

15.     The Debtors testified under oath at their first 341 examination herein (the "341") that at least one of their creditors listed in their bankruptcy schedules, Chase was owed money for at least 10 years prior to the Filing Date.

16.     The Debtor's schedules list a debt as of the Filing Date to "Nat/West Assignee to Jubilee Ltd. Partnership" ("Jubilee") in the sum of $17,958.81.  Plaintiff's review of the Nassau County clerk's records indicate that in fact, Jubilee had obtained a judgment in connection with this debt prior to the Filing Date, pursuant to a lawsuit it filed in the New York State Supreme Court, County of Nassau, in or around March 1996, to recover a debt due under a retail installment agreement which had been defaulted on before this lawsuit was commenced; and this judgment was not satisfied as fo the Filing Date.

17.     At least one other creditor herein, Sears, filed a proof of claim herein which set forth that its claim against the Debtors arose in 1983.

18.     Until 1998, the Debtors owned the fee simple interest in real property located at 324 Ocean Avenue, Massapequa, New York (the "Ocean Avenue Property").

19.    The Debtors testified under oath at the 341 that they refinanced the Ocean Avenue Property in or around 1994 and gave not less than $25,000 to their son, Joseph Jr. (the "Gift to Joseph Jr."), so that he could purchase real property.  The Debtors have not turned over any of the documents requested by Plaintiff in this connection, and Plaintiff has been unable to verify the location of the property bought, whether more monies were given by the Debtors to Joseph, Jr. at this or other times, etc.

20.    Plaintiff's search of the property records indicates that the refinancing of the Ocean Avenue Property in fact occurred in 1996.

21.    The Debtors testified at their 341, and have provided Plaintiff with a closing statement which establishes, that they sold the Ocean Avenue Property on or about May 14, 1998 for $390,000, and they received approximately $200,000 net proceeds from this sale.

22.    The Debtors testified under oath at the 341 that after the sale of the Ocean Avenue Property, they moved into real property located at 100 Brendan Avenue, Massapequa Park, NY (the "Brendan Avenue Property"), which was put in the names of the Debtors' daughter, Mrs. Carragher, and the Debtors' son-in-law, Mr. Carragher.

23.    The Debtors testified at the 341 that the Brendan Avenue Property cost $180,000; that not less than $50,000 of this came from the Debtors' $200,000 net proceeds from their sale of the Ocean Avenue Property; and that the rest of the money to purchase the Brendan Avenue Property came from a mortgage in the sum of $130,000.

24.    The Debtors, through counsel, later asserted to Plaintiff that 'their gift' to the Carraghers 'to buy' the Brendan Avenue Property was only approximately $20,000.

25.    Plaintiff's search of the property records indicates that the Brendan Avenue Property was bought by the Carraghers for $176,000, and that the mortgage was $161,555.00.

26.    It therefore appears in either event that all or substantially all of the entire down payment for the Brendan Avenue Property came from the Debtors' monies.

27.    The Debtors testified at the 341 that they lived in the Brendan Avenue Property the entire time this Property was 'owned by the Carraghers'; and that the Debtors spent not less than $10,000 to improve this Property so that the Debtors could live in this Brendan Avenue Property.

28.    The Debtors further testified at their 341 (and Plaintiff's search of the property records indicates) that in 2000, the Brendan Avenue Property was sold for $260,000.

29.    Given that the mortgage on the Brendan Avenue Property was approximately $160,000, the net from the sale of this Property was, upon information and belief, not more than $100,000, before payment of attorneys' fees and other closing costs.

30.    The Debtors further testified at their 341 (and Plaintiff's search of the property records indicates) that after the sale of the Brendan Avenue Property in 2000, the Debtors moved into real property located at 59 Beaumont Avenue, Massapequa, New York (the "Beaumont Avenue Property"), which was purchased for $360,000.

31.    The Beaumont Avenue Property was put in the name of the Carraghers.

32.     Plaintiff's search of the property records indicates that there were two mortgages taken out on the Beaumont Avenue Property at the time of the purchase, which aggregated approximately $259,800.

33.    The Debtors, through counsel, advised Plaintiff after the 341, that they gave

$20,000 of additional monies to the Carraghers for "their" purchase of the Beaumont Avenue Property.

34.     All or substantially all of the money that was put down for the Beaumont Avenue Property, allegedly owned by the Carraghers, came from the Debtors, either through the monies obtained through the increase in value of the Brendan Avenue Property (which was itself only bought entirely or almost entirely through gifts from the Debtors, who then lived at this Property the entire time it was owned by the Carraghers and paid for the improvements on this Property) or from the additional, new $20,000 gift from the Debtors.

35.     The Debtors have lived at the Beaumont Avenue Property the entire time that it has been owned 'by the Carraghers.'

36.     The Debtors, through counsel, advised Plaintiff after the 341, that they 'gave' about $8,000 to improve the Beaumont Avenue Property, presumably so they could live at this property comfortably.

37.     Upon information and belief, the Beaumont Avenue Property is presently worth not less than $475,000.

38.     The Debtors further testified at the 341 (and provided Plaintiff with documents after the 341) that not less than $10,000-$14,000 of the net proceeds from the Debtors' sale of the Ocean Avenue Property was gifted into mutual fund accounts (the "Mutual Funds") which were established for the Debtors' grandchildren.

39.     Upon information and belief, Christina C., Jacqueline V. and Sarah V. are the Debtors' grandchildren who received these gifts (at times when the Debtors owed monies, including on a debt that was or eventually became a judgment that has not been fully satisfied) and who still have the

monies, either in their own accounts or in custodial or trust accounts held for them by Joseph, Jr.,

Linda, and/or the Carraghers.

40.    The Debtors have failed to respond to Plaintiff's requests as to how the

Debtors spent the approximately- $200,000 net proceeds from the Debtors' sale of the Ocean Avenue

Property (apart from their admissions regarding their $20,000 or $50,000 'gift' in connection with the

purchase of the Brendan Avenue Property; the $10,000 of improvements to this Property; the $20,000

'gift' in connection with the purchase of the Beaumont Avenue Property and the approximately-$8,000

of improvements to this Property; the $10,000-$14,000 of gifts to their grandchildren; and $14,250

which they turned over to Plaintiff, as trustee herein), other than to state that they used this money "to

live," and to send Plaintiff documents which indicated that they appear to have deposited approximately

$80,000 of this into mutual fund accounts through Fleet Enterprises.

41.    Upon information and belief, the Debtors may have paid all or a portion of the

mortgage payments, taxes and/or other bills in connection with the Brendan Avenue Property and/or

the Beaumont Avenue Property.

42.    The Debtors also listed in their schedules and testified at their 341 hearing that

they own a life insurance policy at Principle Insurance Company (the "Life Insurance Policy"), as to

which each of the Debtors was the other's beneficiary, and which had cash surrender value.

43.    Despite repeated requests, no information was ever supplied to the Plaintiff

concerning the Life Insurance Policy, nor was the cash value of the Life Insurance Policy ever turned

over to Plaintiff.

### AS AND FOR A FIRST CLAIM FOR RELIEF

44.     Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "43" of this Complaint as if fully set forth herein.

45.     By virtue of the above, each of the Defendants herein should be ordered and

directed, jointly and severally, at their sole cost and expense, to immediately amass (and recreate, if and

to the extent necessary), and turn over and deliver to Plaintiff:

-  full and complete written accountings itemizing and explaining, in detail, what occurred to the other net proceeds received by the Debtors from the sale of their Ocean Avenue Property, and if and to the extent still unspent or still available or on deposit with any bank or financial institution or otherwise invested, all information regarding same; etc.;

-  full and complete written accountings itemizing and explaining, in detail, the source of the mortgage payments, preservation (such as property tax payments, etc.), and improvements to the Brendan Avenue Property and the source of the mortgage payments, preservation (such as property tax payments, etc.), and enhancement of the Beaumont Avenue Property;

- all other and further documents and information reflecting, evidencing or otherwise relating in any way to the Ocean Avenue Property, the Brendan Avenue Property, the Beaumont Avenue Property and/or any other parcel of real property or any asset or claim of any kind or nature that was or could be deemed to be property of the Bankruptcy Estate herein, legally, equitably, and/or beneficially;

- all other and further documents and information reflecting, evidencing or otherwise relating in any way to other and further monies or gifts by the Debtors or from property or money belonging to them, to the Carraghers, Joseph, Jr., Linda V., Christina C., Jacqueline V., and Sarah V., and any and all other insiders or affiliates of the Debtors as said terms are defined in the Bankruptcy Code, from and including 1995; and

-- all other and further documents and information reflecting, evidencing or otherwise relating in any way to the Life Insurance Policy, including but not limited to the face value of the Life Insurance Policy; the cash surrender value of the Life Insurance Policy; proof of any monies allegedly borrowed from the Life Insurance Policy, when the monies were borrowed, and what these funds were

used for, and if and to the extent any of these monies is still unspent or still available or on deposit with any bank or financial institution or otherwise invested, all information regarding same; etc.

## AS AND FOR A SECOND CLAIM FOR RELIEF

46.     Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "45" of this Complaint as if fully set forth herein.

47.     This Court should find that an agreement existed, and/or should be implied

under the circumstances herein, between the Debtors and the Carraghers that the Debtors are the true

equitable owners of all or a portion of the Beaumont Avenue Property, and/or that the Carraghers'

nominal ownership of the Beaumont Avenue Property is subject to an equitable lien or constructive trust

in favor of the Bankruptcy Estate in this case.  Among other things:

(a) The Carraghers stand in a confidential relationship with the Debtors;

(b) The Debtors made or accounted for all or substantially all of the payments for the purchase of the Beaumont Avenue Property, either through the monies obtained through the increase in value of the Brendan Avenue Property (which was itself only bought through gifts from the Debtors, who then lived at this Property the entire time it was owned by the Carraghers and paid for the improvements on this Property) or from the additional, new $20,000 gift from the Debtors;

(c) The Debtors caused or allowed title to the Beaumont Avenue Property to be placed in the name of the Carraghers;

(d) The Debtors have resided at the Beaumont Avenue Property since it was first purchased (through monies obtained from gifts from the Debtors and the sale of the Brendan Avenue Property, where the Debtors also lived at all times since its purchase, through monies from the Debtors);

(e) The Debtors paid for improvements to this Property (and the Brendan Avenue Property, etc.); and
(f) the monies used to pay for the down payments (at least) were "given" by the Debtors, and the Properties were put in the Carraghers' names, at times when the

Debtors owed monies, including on a debt including on a debt as to which a lawsuit had already been commenced before the Gifts, and a judgment was rendered in such lawsuit which has never been fully satisfied.

48.     By virtue of the above, Plaintiff seeks this Court's judgment that (i) the Carraghers are subject to an equitable duty to convey all or a portion of the title to the Beaumont Avenue Property to the Debtors and therefore the Bankruptcy Estate, on the ground that they would be unjustly enriched if they were permitted to retain title to this Property, (ii) it would be equitably unjust under the circumstances if the equitable title to the Beaumont Avenue Property were allowed or determined to be owned by anyone other than the Debtors and therefore the Bankruptcy Estate, and/or (iii) an equitable lien or constructive trust should be imposed or deemed to exist on the Beaumont Avenue Property in favor of creditors and the Bankruptcy Estate herein, under the circumstances herein.  Plaintiff and the Estate further should be granted judgment for all other and further rights and remedies in law and in equity as are necessary and/or appropriate to safeguard and recover all of the Estate's interests and claims in and to the Beaumont Avenue Property, including but not limited to all proceeds, profits, offspring, rents, or product thereof.

49.     If and to the extent that the Court holds that the Bankruptcy Estate owns some interest or rights in the Beaumont Avenue Property but not the full equitable and legal interest in the Beaumont Avenue Property, and that the Carraghers owns some interest in the Beaumont Avenue Property, Plaintiff hereby seeks this Court's judgment authorizing Plaintiff to sell such interest of the Carraghers in the Beaumont Avenue Property, together with the Debtor's/Estate's interest therein, under and pursuant to Section 363(h) of the Bankruptcy Code.  Plaintiff further requests a judgment in such event that the proceeds of such sale should be divided among the Estate and said other party

according to their respective rights as determined by this Court after payment of all of the costs, fees

and disbursements of Plaintiff's professionals, agents and representatives (including but not limited to all

professional fees incurred in or in connection with this adversary proceeding as well as with the sale),

since (a) partition in kind of the Beaumont Avenue Property among the Estate and such other person or

entity is impracticable, (b) the sale of the Estate's undivided interest in the Beaumont Avenue Property

would realize significantly less for the Estate than sale of the Beaumont Avenue Property free of such

other entity's interest and claim therein, (c) the benefit to the Estate of the sale of the Beaumont Avenue

Property free and clear of such other entity's interest therein would outweigh the detriment, if any, to

such other person or entity, from such sale, and (d) the Beaumont Avenue Property is not used in the

production, transmission or distribution for sale of electric energy or of natural or synthetic gas for heat,

light or power.

## AS AND FOR A THIRD CLAIM FOR RELIEF

50.     Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "49" of this Complaint as if fully set forth herein.

51.     There were numerous badges of fraud in connection with the Debtors'

monetary gifts to the Carraghers (together with any and all other or further monies or properties given

or transferred to the Carraghers for no, or less than fair or reasonably equivalent, legal consideration,

the "Gifts"), including but not limited to (a) the Gifts to the Carraghers were made for no legal

consideration at all, or less than fair or reasonably equivalent, legal consideration, (b) the Gifts to the

Carraghers were made at times when the Debtors were indebted to creditors, including on a debt as to

which a lawsuit had already been commenced before the Gifts, and a judgment was rendered in such

lawsuit that has never been fully satisfied, (c) the Gifts to the Carraghers were intra-family transfers made by the Debtors to their daughter Mrs. Carragher and their son-in-law Mr. Carragher, and (d) these Gifts decreased the Debtors' net worth substantially.  Further, the Gifts to the Carraghers to perform repairs to, and/or to make improvements to, the Real Properties, increased the value of the Brendan Avenue Property and the Beaumont Avenue Property, and were made while the Debtors owed and continued to owe debt (including on a debt that was or eventually became a judgment that has never been fully satisfied), and were accruing new debts which were not being paid.

52.     By virtue of the above, the Gifts to the Carraghers were done with actual intent to hinder, delay or defraud the Debtors' creditors, and therefore should be avoided as fraudulent conveyances, and the Bankruptcy Estate should be granted judgment directing the Carraghers, jointly and severally, to turn over to Plaintiff the full value of the Gifts together with interest from the Dates of the Gifts, attorneys' fees, punitive damages, and costs.

### AS AND FOR A FOURTH CLAIM FOR RELIEF

53.     Plaintiff respectfully repeats, reiterates and reavers each and every averment set forth in paragraphs "1" through "52" of this Complaint as if fully set forth herein.

54.     The Debtors received no legal consideration for the Gifts to the Carraghers.

55.     Upon information and belief, (a) the Debtors were insolvent at the time of, or was rendered insolvent as a result of, the Gifts to the Carraghers, and/or (b) the Debtors intended or believed at the time of such Gifts that they would incur, or had incurred, debts beyond their ability to pay as they matured, or which they did not intend to pay and/or never attempted to pay in full and/or (c) an action for money damages had been filed before the time(s) of the Gifts, as to which a judgment

has been rendered which has not been fully satisfied.

56.     By virtue of the above, the Gifts to the Carraghers were done with constructive intent to hinder, delay or defraud the Debtors' creditors, and therefore should be avoided as fraudulent conveyances, and the Bankruptcy Estate should be granted judgment directing the Carraghers, jointly and severally, to turn over to Plaintiff the full value of the Gifts together with interest from the Dates of the Gifts and costs.

### AS AND FOR A FIFTH CLAIM FOR RELIEF

57.     Plaintiff respectfully repeats, reiterates and reavers each and every averment set forth in paragraphs "1" through "56" of this Complaint as if fully set forth herein.

58.     There were numerous badges of fraud in connection with the Gift to Joseph Jr. (and/or any and all other or further monies or properties given or transferred to Joseph Jr. and/or Linda V. for no, or less than fair or reasonably equivalent, legal consideration), including but not limited to that it/they: (a) was/were made for no legal consideration, or less than fair or reasonably equivalent, legal consideration, (b) was/were made at a time when the Debtors were indebted to creditors, including on a debt as to which a lawsuit had, upon information and belief, already been commenced, and a judgment was rendered in such lawsuit that has never been fully satisfied, (c) was/were (an) intra-family transfer made by the Debtors to their son, Joseph Jr. and/or daughter-in-law, Linda V., and (d) decreased the Debtor's net worth.

59.     By virtue of the above, the Gift to Joseph Jr.(and/or any and all other or further monies or properties given or transferred to Joseph Jr. and/or Linda V. for no, or less than fair or reasonably equivalent, legal consideration) was/were done with actual intent to hinder, delay or defraud

the Debtors' creditors, and therefore should be avoided as a fraudulent conveyance, and judgment

should be granted directing Joseph Jr. and/or Linda V. (or if she is deceased, her Estate, heirs, or

assigns) to turn over to Plaintiff the full value of the Gift(s)/transfers, together with attorneys' fees,

punitive damages, interest and costs.

### AS AND FOR A SIXTH CLAIM FOR RELIEF

60.    Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "59" of this Complaint as if fully set forth herein.

61.    As stated above, the Debtors received no legal consideration for the Gift to

Joseph Jr. (and/or any and all other or further monies or properties given or transferred to Joseph Jr.

and/or Linda V. for no, or less than fair or reasonably equivalent, legal consideration)

62.    Upon information and belief, (a) the Debtors were insolvent at the time of, or

was rendered insolvent as a result of, the Gift(s)/transfers to Joseph Jr. and/or Linda V., and/or (b) the

Debtors intended or believed at the time of such Gift(s)/transfers that they would incur, or had incurred,

debts beyond their ability to pay as they matured, or which they did not intend to pay and/or never

attempted to pay in full and/or (c) an action for money damages had, upon information and belief, been

filed before the time(s) of the aforementioned Gift(s), as to which a judgment has been rendered which

has not been fully satisfied.

63.    By virtue of the above, the aforementioned Gift(s)/transfers to Joseph Jr. and/or

Linda V. was/were done with constructive intent to hinder, delay or defraud the Debtors' creditors, and

therefore should be avoided as fraudulent conveyances, and the Bankruptcy Estate should be granted

judgment directing Joseph Jr. to turn over to Plaintiff the full value of the Gift(s)/transfers together with

interest from the Dates of the Gifts /transfers and costs.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

64.     Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "63" of this Complaint as if fully set forth herein.

65.     There were numerous badges of fraud in connection with the Gift to Jacqueline

V. (and/or any and all other or further monies or properties given or transferred to Jacqueline V. for no,

or less than fair or reasonably equivalent, legal consideration), including but not limited to that it/they (a)

was/were made for no legal consideration at all, or less than fair or reasonably equivalent, legal

consideration, (b) was/were made at a time when the Debtors were indebted to creditors, including on

a debt as to which a lawsuit had already been commenced before the Gift(s)/transfers, and a judgment

was rendered in such lawsuit that has never been fully satisfied, (c) was/were (an) intra-family transfer

made by the Debtors to their granddaughter Jacqueline V. and (d) decreased the Debtor's net worth.

66.     By virtue of the above, the Gift(s)/transfers to Jacqueline V. (and/or any and all

other or further monies or properties given or transferred to Jacqueline V. for no, or less than fair or

reasonably equivalent, legal consideration) was/were done with actual intent to hinder, delay or defraud

the Debtors' creditors, and therefore should be avoided as a fraudulent conveyance, and judgment

should be granted directing Jacqueline V. to turn over to Plaintiff the full value of the Gift(s) to her,

together with attorneys' fees, interest, damages, costs and disbursements.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF

67.     Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "66" of this Complaint as if fully set forth herein.

68.     The Debtors received no legal consideration for the Gift to Jacqueline V.

16

(and/or any and all other or further monies or properties given or transferred to Jacqueline V. for no, or less than fair or reasonably equivalent, legal consideration)

69.     Upon information and belief, (a) the Debtors were insolvent at the time of, or was rendered insolvent as a result of, the Gift(s)/transfers to Jacqueline V. and/or (b) the Debtors intended or believed at the time of such Gift(s)/transfers that they would incur, or had incurred, debts beyond their ability to pay as they matured, or which they did not intend to pay and/or never attempted to pay in full and/or (c) an action for money damages had been filed before the time(s) of the Gifts/transfers, as to which a judgment has been rendered which has not been fully satisfied.

70.     By virtue of the above, the aforementioned Gift(s)/transfers to Jacqueline V. was/were done with constructive intent to hinder, delay or defraud the Debtors' creditors, and therefore should be avoided as fraudulent conveyances, and the Bankruptcy Estate should be granted judgment directing Jacqueline V. to turn over to Plaintiff the full value of the Gift(s)/transfers together with interest from the Dates of the Gifts /transfers and costs.

## AS AND FOR A NINTH CLAIM FOR RELIEF

71.     Plaintiff respectfully repeats, reiterates and reavers each and every averment set forth in paragraphs "1" through "70" of this Complaint as if fully set forth herein.

72.     There were numerous badges of fraud in connection with the Gift to the Sarah V. (and/or any and all other or further monies or properties given or transferred to Sarah V. for no, or less than fair or reasonably equivalent, legal consideration), including but not limited to that the Gift(s)/transfers: (a) was/were made for no legal consideration, (b) was/were made at a time when the Debtors were indebted to creditors, including on a debt as to which a lawsuit had already been

commenced before the Gift(s)/transfers, and a judgment was rendered in such lawsuit that has never

been fully satisfied, (c) was/were (an) intra-family transfer made by the Debtors to their granddaughter

Sarah V., and (d) decreased the Debtors' net worth.

73.    By virtue of the above, the aforementioned Gift(s)/transfers to Sarah V.

was/were done with actual intent to hinder, delay or defraud the Debtors' creditors, and therefore

should be avoided as a fraudulent conveyance, and judgment should be granted directing Sarah V. to

turn over to Plaintiff the full value of the Gift(s)/transfers to her, together with attorneys' fees, punitive

damages, interest and costs.

<u>**AS AND FOR A TENTH CLAIM FOR RELIEF**</u>

74.    Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "73" of this Complaint as if fully set forth herein.

75.    As stated above, the Debtors received no legal consideration for the Gift to

Sarah V. (and/or any and all other or further monies or properties given or transferred to Sarah V. for

no, or less than fair or reasonably equivalent, legal consideration).

76.    Upon information and belief, (a) the Debtors were insolvent at the time of, or

was rendered insolvent as a result of, the Gift(s)/transfers to Sarah V. and/or (b) the Debtors intended

or believed at the time of such Gift(s)/transfers that they would incur, or had incurred, debts beyond

their ability to pay as they matured, or which they did not intend to pay and/or never attempted to pay

in full and/or (c) an action for money damages had been filed before the time(s) of the Gift(s)/transfers,

as to which a judgment has been rendered which has not been fully satisfied.

77.    By virtue of the above, the Gift(s)/transfers to Sarah V. was/were done with

constructive intent to hinder, delay or defraud the Debtors' creditors, and therefore should be avoided

as fraudulent conveyances, and the Bankruptcy Estate should be granted judgment directing Sarah V.

to turn over to Plaintiff the full value of the Gift(s)/transfers together with interest from the Dates of the

Gift(s)/transfers and costs.

### AS AND FOR AN ELEVENTH CLAIM FOR RELIEF

78.     Plaintiff respectfully repeats, reiterates and reavers each and

every averment set forth in paragraphs "1" through "77" of this Complaint as if fully set forth herein.

79.     There were numerous badges of fraud in connection with the Gift to Christina

C. (and/or any and all other or further monies or properties given or transferred to Christina C. for no,

or less than fair or reasonably equivalent, legal consideration), including but not limited to that the

Gift(s)/transfers (a) was/were made for far no consideration, (b) was/were made at a time when the

Debtors were indebted to creditors, including on a debt as to which a lawsuit had already been

commenced before the Gift(s)/transfers, and a judgment was rendered in such lawsuit that has never

been fully satisfied, (c) was/were (an) intra-family transfer made by the Debtors to their granddaughter

Christina C., and (d) decreased the Debtors' net worth.

80.     By virtue of the above, the Gift to Christina C. (and/or any and all other or

further monies or properties given or transferred to Christina C. for no, or less than fair or reasonably

equivalent, legal consideration) was done with actual intent to hinder, delay or defraud the Debtors'

creditors, and therefore should be avoided as a fraudulent conveyance, and judgment should be granted

directing Christina C. to turn over to Plaintiff the full value of the Gift(s)/transfers to her, together with

attorneys' fees, punitive damages, interest and costs.

## AS AND FOR A TWELFTH CLAIM FOR RELIEF

81.     Plaintiff respectfully repeats, reiterates and reavers each and every averment set forth in paragraphs "1" through "80" of this Complaint as if fully set forth herein.

82.     As stated above, the Debtors received no legal consideration for the Gift to Christina C. (and/or any and all other or further monies or properties given or transferred to Christina C. for no, or less than fair or reasonably equivalent, legal consideration).

83.     Upon information and belief, (a) the Debtors were insolvent at the time of, or was rendered insolvent as a result of, the Gift(s)/transfers to Christina C. and/or (b) the Debtors intended or believed at the time of such Gift(s)/transfers that they would incur, or had incurred, debts beyond their ability to pay as they matured, or which they did not intend to pay and/or never attempted to pay in full and/or (c) an action for money damages had been filed before the time(s) of the Gift(s)/transfers, as to which a judgment has been rendered which has not been fully satisfied.

84.     By virtue of the above, the Gift(s)/transfers to Christina C. was/were done with constructive intent to hinder, delay or defraud the Debtors' creditors, and therefore should be avoided as fraudulent conveyances, and the Bankruptcy Estate should be granted judgment directing Christina C. to turn over to plaintiff the full value of the Gift(s)/transfers together with interest from the Dates of the Gift(s)/transfers and costs.

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF

85.     Plaintiff respectfully repeats, reiterates and reavers each and every averment set forth in paragraphs "1" through "84" of this Complaint as if fully set forth herein.

86.     Pursuant to 11 U.S.C. Section 542, the full cash surrender value of the Life

Insurance Policy, and any and all other or further monies which the Debtors have in their actual or

constructive possession, custody or control, or which legally, beneficially or equitably are owned by

them above their legally owed exemption, constitute(s) property of the Debtors' Estate, and as such the

Debtors should be immediately directed to turn over all of the same to Plaintiff, as the duly appointed

representative of the Debtors' Estate.

WHEREFORE, Plaintiff requests judgment as set forth above, together with such other,

further relief to Plaintiff and the Bankruptcy Estate in this case as this Court deems to be

just and proper.

Dated: Mineola, New York
      September 1, 2004           MELTZER, LIPPE, GOLDSTEIN & BREITSTONE, LLP
                                 Counsel for Plaintiff/Trustee

                   BY: /S/ Neil H. Ackerman
                        Neil H. Ackerman, Esq. (NHA 9336)
                        190 Willis Avenue
                        Mineola, New York  11501
                        (516) 747-0300 (tel.)
                        (516) 747-0653 (fax)