UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re                                                                Case No. 802-86399-478
                                                                            Chapter 7

JOSEPH & FRANCES VENTIMIGLIA,

                                    Debtors.
-------------------------------------------------------X
NEIL H. ACKERMAN, as Trustee of
the Bankruptcy Estate of JOSEPH AND                    Adv. Proc. No. 804-8501-478
FRANCES VENTIMIGLIA,


                                    Plaintiff,
                  - against -


JOSEPH VENTIMIGLIA, a/k/a JOSEPH
VENTIMIGIA, Sr., a/k/a JOSEPH R.
VENTIMIGLIA; FRANCES VENTIMIGLIA,
KAREN CARRAGHER; ROBERT M. CARRAGHER,
a/k/a ROBERT M. CARRAGHER, JR.; CHRISTINA
CHARRAGHER, JOSEPH VENTIMIGLIA, a/k/a
JOSEPH VENTIMIGLIA JR.; LINDA VENTIMIGLIA;
JACQUELINE VENTIMIGLIA; AND SARAH
VENTIMIGLIA,
-------------------------------------------------------X

## <u>Memorandum Decision and Order</u>


**Meltzer, Lippe, Goldstein & Brietstone, LLP**
Counsel for Plaintiff/Trustee
by: Neil H. Ackerman, Esq.
190 Willis Avenue
Mineola, NY 11501

**Howard R. Aranoff, Esq.**
Counsel for Defendants
475 Northern Boulevard, Suite 16
Great Neck, NY 11021

This matter is before the Court pursuant to an adversary complaint filed by Neil Ackerman, Esq., the Chapter 7 trustee appointed in the case of Joseph Ventimiglia, Sr. and Frances Ventimiglia (collectively, the "Debtors").  The Chapter 7 trustee seeks to avoid certain conveyances made by the Debtors to their children and/or to have a constructive trust or equitable lien placed on certain real property purchased by the Debtors' daughter and son-in-law. In addition, the Chapter 7 trustee seeks to avoid certain transfers made by the Debtors to their grandchildren and seeks turnover of the cash value of a life insurance policy purchased by the Debtors prepetition.  For the reasons set forth below, the claims set forth in the Chapter 7 trustee's complaint are denied in part and granted in part.    The following constitutes the Court's findings of fact and conclusions of law under Fed. R. Civ. P. 7052.

## PROCEDURAL HISTORY

On September 6, 2002 ("Filing Date") the Debtors filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code ("Petition Date").  On October 8, 2002, Neil Ackerman, Esq. was appointed and duly qualified to serve as the Chapter 7 trustee of the Debtors' case (the "Trustee" or "Plaintiff").  On  September 1, 2004, the Trustee filed this adversary proceeding against the Debtors, the Debtors' daughter, Karen Carragher and her husband, Robert M. Carragher, their children, Robert M. Carragher, Jr. and Christina Carragher, and the Debtors' son, Joseph Ventimiglia Jr. and his deceased wife, Linda Ventimiglia, and two of their children, Jacqueline Ventimiglia and Sarah Ventimiglia (collectively, the "Defendants").

On October 8, 2004, the Defendants filed an Answer, and a trial took place on October 3, 2006 and October 10, 2006.  Subsequently, both the Plaintiff and the Defendants filed findings of fact and conclusions of law, and the matter was marked submitted.

## FACTS

The Debtors have two children, Karen Carragher and Joseph Ventimiglia, Jr.   Karen Carragher is married to Robert Carragher, and they have two children, Christina Carragher and Robert Carragher, Jr.  Joseph Ventimiglia, Jr. was married to Linda Ventimiglia, who is now deceased.  Jacqueline Ventimiglia and Sara Ventimiglia are two of their three children.

In 1981, the Debtors purchased a home located at 324 Ocean Avenue, Massapequa ("Ocean Avenue")  for $140,000, which they lived in and owned until 1998.  At the time of the Ocean Avenue purchase, Debtor Joseph Ventimiglia ran a soda distribution business called Ace Metro Beverage, Inc. ("Ace Metro").  Ace Metro purchased all of its product from Brooklyn Bottling, which sold 7-Up brand sodas.  According to  the testimony of Joseph and Frances Ventimiglia, Ace Metro was worth approximately $500,000 in the mid-1980's and the Debtors derived their income from Ace Metro.   However, in the early to mid-1990's Brooklyn Bottling lost the right to sell 7-Up brand products, and therefore Ace Metro no longer had a contract to distribute 7-Up product.   As a result, Ace Metro began distributing other soda products to small stores, and was no longer as profitable a business.   At or around this same time, the Debtors' son, Joseph Ventimiglia, Jr. was given half ownership of Ace Metro by the Debtor, without consideration.   There is no documentary evidence regarding the value of this transfer.  Ace Metro generated much smaller revenues at this point and the Debtors did not cut back on their expenses to reflect their decrease in income.  Instead, the Debtors relied on credit to maintain their current standard of living.

In 1985 or 1986, after approximately six months of marriage, Karen and Robert Carragher moved in with the Debtors at Ocean Avenue and continued to live with the Debtors for thirteen years. There is no evidence that the Carraghers paid any rent to the Debtors during the time they lived at Ocean Avenue, nor is there any evidence that the Carraghers contributed to the maintenance costs or to their food expenses. Karen Carragher and the Debtors testified that the Carraghers had been making payments to the Debtors in the amount of $100 per week while they lived at Ocean Avenue, which constituted loans to the Debtors, to assist them financially. According to the testimony, the "loans" were made for approximately thirteen years, in the aggregate amount of approximately $50,000. However, there is no documentary or other evidence to support the oral testimony of the Debtors and Karen Carragher that such loans were ever made. In fact, the testimony reveals that Mr. Carragher's earnings from approximately 1988 through 1991 were $225 per week. The Court finds that the Defendants' oral testimony regarding these alleged loans is not credible.

On March 15, 1996, Jubilee, Ltd. Partnership, as successor in interest to Nat/West ("Jubilee") commenced an action against Frances Ventimiglia, seeking judgment against her in the amount of $17,923.70, plus attorneys' fees, interest and costs ("Jubilee Lawsuit"). (Plaintiff's Ex. 8). The debt to Jubilee arose from funds borrowed on a cash reserve checking account maintained at Nat/West Bank. On April 8, 1996, the Debtors and Jubilee entered into stipulation of settlement whereby Frances Ventimiglia agreed to pay $21,508.44 in monthly payments over several years in full satisfaction of the Jubilee Lawsuit (the "Jubilee Stipulation"). The Jubilee Stipulation further provides that in the event Frances Ventimiglia defaulted in making a payment, upon five days' written notice, Jubilee would be entitled to enter judgment

4

against her for the full amount stated in the complaint, less any payments made by her.  Frances Ventimiglia defaulted in making full repayment and Jubilee has filed a claim in this case.

On July 31, 1996, more than six years prior to the Petition Date, the Debtors refinanced the mortgage on Ocean Avenue by obtaining a mortgage in the approximate amount of $116,400 (Defendants' Ex. A) ("Ocean Ave. Refinance").  Pursuant to the settlement statement prepared in connection with the Ocean Ave. Refinance, the Debtors used approximately $104,305.87 from the total amount refinanced to pay off the then-current mortgage, the borrowing costs and to pay off most of their creditors.  The Debtors did not use the funds from the Ocean Avenue Refinance to pay off the debt owed to Jubilee in full.  After making all of these payments, the most the Debtors could have received from the Ocean Ave. Refinance was $11,685.13.  Although Joseph Ventimiglia testified at the section 341 meeting that he transferred $25,000 to his son Joseph Ventimiglia, Jr. from the proceeds remaining from the Ocean Ave. Refinance, his wife Frances Ventimiglia and  Joseph Ventimiglia, Jr. testified that Joseph Ventimiglia was mistaken and no such transfer was made.  The only documentary evidence produced regarding this alleged transfer is the settlement statement from the Ocean Ave. Refinance.  It does not support a finding that any such transfer was made to Joseph Ventimiglia, Jr. because there were insufficient proceeds given to the Debtors from the Ocean Ave. Refinance to make a $25,000 transfer.

On May 14, 1998, the Debtors sold Ocean Avenue to third parties for $390,000, and netted approximately $229,000 from the sale ("Net Proceeds").  (Defendants' Ex. B). Just prior to that time, on April 23, 1998, Karen and Robert Carragher purchased  a home located at 100 Brendan Avenue, Massapequa ("Brendan Avenue") for $176,000.   (Defendants' Ex. C).  The Settlement Statement from the purchase of Brendan Avenue reflects that the Carraghers obtained a mortgage in the amount of $161,555.00 and paid $8,000 in an initial deposit and $16,987.68 in

5

cash to cover the remainder of the purchase price and borrowing costs.  According to the Debtors, they transferred $25,000 of the Net Proceeds to the Carraghers to provide them with the cash portion of the purchase of Brendan Avenue.[1]  This was a transfer of $25,000 by the Debtors to the Carraghers without fair consideration.

At the time of the sale of Ocean Avenue, Frances Ventimiglia still had an outstanding obligation due to Jubilee under the Jubilee Stipulation and owed an undisclosed amount to other creditors.  The Debtors did use some of the Net Proceeds to pay off most of their creditors, but they did not pay off the amounts owed under the Jubilee Stipulation in full, and the Debtors did not pay off all of their other creditors.  For example, the Debtors still had an outstanding obligation to Chase on an overdraft line of credit, and to Fleet Bank.

Sometime in May, 1998 the Debtors moved into Brendan Avenue with the Carraghers after they sold Ocean Avenue.  According to the Debtors' testimony, Joseph Ventimiglia stopped working full time at Ace Metro around the same time that Ocean Avenue was sold, and all of the stock of Ace Metro was transferred to Joseph Ventimiglia, Jr.  There is no evidence of the value of this transfer.  After that, Joseph Ventimiglia continued to work a few days per week at Ace Metro to generate cash for living expenses, and the Debtors used the Net Proceeds from the sale of Ocean Avenue to supplement their income.  The Debtors testified that they invested approximately $80,000 of the Net Proceeds in the stock market, with the hopes that Joseph Ventimiglia could generate some income as a day trader.   The Debtors also testified that they purchased an Infiniti auto by making a $10,000 down payment on the purchase price and

---

[1]

 Apparently, the Debtors borrowed approximately $25,000 from a relative and repaid the relative after the closing on the sale of Ocean Avenue took place.

financing the remainder.  As a result, the Debtors incurred an obligation to make monthly

payments of approximately $400 for an unspecified number of months towards this purchase.

The Debtors lived at Brendan Avenue with the Carraghers[2] until July 11, 2000, when it

was sold.  The Debtors testified that in total, they transferred $7,000 to $10,000 to the

Carraghers so they could make improvements to Brendan Avenue.  Other than these transfers to

the Carraghers for home improvements, the Debtors state that they made no other payments

towards the mortgage or maintenance applicable to Brendan Avenue.  The Debtors did not use

the Net Proceeds to pay off the remaining debt owed to Jubilee in full, which remained an

obligation owed by the Debtors.

On July 11, 2000, the Carraghers sold Brendan Avenue for $260,000.  The sale netted

$42,108.50 for the Carraghers.  (Defendants' Ex. D).  On the same date, the Carraghers

purchased a home located at 59 Beaumont Avenue, Massapequa for $360,000 (Defendants' Ex.

E).  The total down payment that was paid at the closing on the purchase of Beaumont Avenue

was $20,000.  An additional $96,325.73 was paid in cash at the closing, and the remainder was

financed by a first and second mortgage.  According to the testimony of Karen Carragher,

$42,000 of the cash paid at the closing came from the net proceeds generated from the sale of

Brendan Avenue.  Karen Carragher and the Debtors testified that the Debtors transferred

$20,000 to the Carraghers to cover the initial down payment.  There is no evidence that this gift

by the Debtors to the Carraghers has been repaid.  Karen Carragher further testified that the

remaining cash needed for the purchase, in the approximate amount of $54,000, came from

---

[2]

The Debtors testified that they spent some time living with Mrs. Ventimiglia's mother in
Florida after they sold Ocean Avenue, but after Joseph Ventimiglia Jr.'s wife died sometime in
2002, they spent all of their time living in Long Island with the Carraghers.

funds borrowed from her husband's retirement account.  The Debtors have lived at Beaumont Avenue from the purchase date to the present.

In addition to the sums transferred to the Carraghers, the Debtors used a portion of the Net Proceeds to purchase mutual funds for the benefit of the Debtors' grandchildren.  Shortly after the sale of Ocean Avenue, the Debtors invested $6,000 in a mutual fund for the benefit of Christina Carragher (Plaintiff's Ex. 12) and $2,000 in a mutual fund for the benefit of Robert Carragher, Jr. (Plaintiff's Ex. 13).  Debtors also invested approximately $6,000 in a mutual fund for the benefit of Jacqueline Ventimiglia (Plaintiff's Ex. 11) and approximately $2,000 in a mutual fund for the benefit of Sarah Ventimiglia (Plaintiff's Ex. 10) (collectively, the "Mutual Funds").  The Debtors' explanation for purchasing the Mutual Funds was that they were, in part, repayments of loans from the Debtors' minor grandchildren, which loans were made at some time prior to the sale of Ocean  Avenue in 1998.  According to the Debtors, they liquidated certain mutual funds which Joseph Ventimiglia's father had purchased for the benefit of his great-grandchildren because they were running out of funds for their living expenses.  However, there is no documentary evidence supporting the Debtors' allegations that they "borrowed" from mutual funds purchased by Joseph Ventimiglia's father or that the investments in the Mutual Funds constituted repayment of a debt owed to minor grandchildren by the Debtors.  There is no evidence of any loan to the Debtors from any source.  The only evidence supporting this theory is the Defendants' self-serving testimony, which is not credible on this issue.  Therefore, the Court finds that the funds used to purchase the Mutual Funds constituted transfers by the Debtors to their grandchildren for no consideration.

At some point in time, the Debtors ceased making the monthly payments to Jubilee pursuant to the Jubilee Stipulation.  On July 22, 2002, a judgment was entered against Frances

Ventimiglia in Nassau County Supreme Court in the amount of $17,843.81, inclusive of interest and costs ("Jubilee Judgment").  On September 6, 2002, less than two months after the Jubilee Judgment was granted, the Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code.

The Debtors' petition reflects that they own a life insurance policy issued by Principle Insurance Company ("Life Insurance Policy"), as to which each of the Debtors was the other's beneficiary, and which has a cash surrender value.  The Trustee has requested information concerning the Life Insurance Policy, and has requested turnover of its cash surrender value.  The Debtors have failed to comply with the Trustee's request.  According to the claims register in this case, the Debtors have $58,782.53 in debt.  The schedules filed with the Debtors' petition reflect that as of the Petition Date, the Debtors were not making monthly rent payments, and they were not making any payments towards the maintenance or other charges in connection with their residence.

## DISCUSSION

The Trustee's causes of action can be categorized as follows:

1) First Cause of Action: The Trustee seeks an accounting of the disbursement of Net Proceeds; of the source of mortgage payments for Brendan Avenue and Beaumont Avenue; any documents relating to Ocean Avenue, Brendan Avenue and Beaumont Avenue, all documents relating to monies or gifts given to the Debtors' grandchildren, and any documents regarding the Life Insurance Policy;

2) Second Cause of Action:  The Trustee seeks an equitable lien, constructive trust or equitable interest in Beaumont Avenue for the benefit of the Debtors' estate, and seeks authorization to conduct a § 363(h) sale of Beaumont Avenue;

9

3) Third Through Twelfth Cause of Action: The Trustee seeks to avoid the transfers of the Debtors' funds to Joseph Ventimiglia, Jr., Karen and Robert Carragher and their children outlined above as actual intent and/or constructive intent fraudulent transfers, and the Trustee seeks attorneys' fees, punitive damages, if appropriate, plus interest and costs; and

4) Thirteenth Cause of Action: The Trustee seeks turn over of the full cash surrender value of the Life Insurance Policy pursuant to Bankruptcy Code § 542.

The applicable statute of limitations for bringing each of these causes of action is set forth in 11 U.S.C. § 108(a). This provision states that provided that the statute of limitations for an action under the relevant state law has not expired as of the petition date, the trustee may commence such action by the later of the end of such period fixed by the statute of limitations, or two years after entry of the order for relief. The Trustee commenced this action within two years of the Petition date, at which time none of the relevant state law statute of limitations applicable to the causes of action set forth in this complaint had expired. Therefore, all causes of action are timely.

The law of the state in which the property is located determines the extent of a debtor's legal or equitable interest in property. *Butner v. U.S.,* 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In this case, New York non-bankruptcy law applies as the property which is the subject of this adversary proceeding is located in New York..

Each of the claims asserted in the complaint shall be addressed on the basis of the legal theories asserted by the Trustee.

**1. Third through Twelfth Causes of Action**.

Under the third through twelfth causes of action, the Trustee seeks to avoid the Debtors' transfers to each of the Defendants as fraudulent conveyances under various applicable

10

provisions of the New York debtor and creditor law. Specifically, the Trustee seeks to avoid these transfers as constructive fraudulent conveyances under N.Y. Debtor & Creditor Law ("DCL") §§ 273, 273-a, 274 and 275, and to avoid these transfers as actual fraudulent conveyances under DCL § 276.

The Trustee relies on his status as lien creditor under § 544 of the Bankruptcy Code to seek to avoid the transfers in question, pursuant to § 544(b)(1) of the Bankruptcy Code. The Court shall analyze each of the transfers separately under the relevant provisions of the DCL.

### a. Alleged Transfer to Joseph Ventimiglia, Jr.

The Trustee seeks to avoid an alleged transfer of $25,000 to Joseph Ventimiglia, Jr., which the Trustee asserts took place shortly after July 31, 1996. The only evidence the Trustee has to support a finding that any transfer took place is Joseph Ventimiglia's testimony at the section 341 meeting, which was contradicted by every other witness, and later denied by Joseph Ventimiglia. The Trustee has provided no documentary evidence to support his claim that this transfer was made. Furthermore, the Trustee's assertion that the funds for this alleged transfer came from the net proceeds of the Ocean Ave. Refinance is belied by the facts of this case. The Debtors realized less than $12,000 in net proceeds from the Ocean Ave. Refinance, after paying the settlement costs and paying off the creditors listed in the settlement statement. Without further evidence supporting the Trustee's allegation that a transfer to Joseph Ventimiglia, Jr. took place, the fifth and sixth causes of action in the complaint shall be dismissed.

### b. Transfers to Karen and Robert Carragher.

### i. Actual Intent Fraudulent Transfers.

Pursuant to the third and fourth causes of action, the Trustee seeks to have the Debtors' transfers to the Carraghers in the aggregate amount of $53,000 - $55,000 avoided as fraudulent

conveyances.  Under the third cause of action, the Trustee asserts that the transfers are avoidable as actual intent fraudulent transfers under DCL § 276.  This section provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

DCL § 276.  The burden of proving "actual intent" of the transferor to defraud is on the party seeking to set aside the conveyance, which must be established by clear and convincing evidence.  *United States v. McCombs*, 30 F.3d 310, 328 (2nd Cir. 1994).

Under Second Circuit case law, certain "badges of fraud" can be used to establish actual intent, because actual intent is rarely susceptible to direct proof.  These badges of fraud include:

1. lack or inadequacy of consideration;

2. family, friendship or close associate relationship between the parties;

3. retention of possession, benefit or use of the property in question by the debtor;

4. the financial condition of the transferor before and after the transfer in question;

5. the existence or cumulative effect of a pattern or series of transactions or course of conduct after the debt is incurred, the onset of financial difficulties, or pendency of threat of suits by creditors; and

6. the chronology of the events and transactions under inquiry.

*Solomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2nd Cir. 1983).

Under DCL § 276, the Court can find fraudulent intent if certain of these badges exist regardless of the adequacy of consideration given.  Clearly the Debtors have a close personal relationship with the Carraghers and had been living with the Carraghers for a number of years.  The Debtors were suffering some degree of financial hardships according to their own testimony.   However, the transfers were not done hastily or in secret, nor could the sale of

12

Ocean Avenue and the subsequent transfers to the Carraghers be deemed unusual.  There is no evidence to support a finding that the Debtors were misleading creditors to believe that the Debtors still owned real property.  The Debtors did retain a substantial portion of the Ocean Avenue sale proceeds to meet their financial needs, and Mr. Ventimiglia was still working at the time of each of the transfers to the Carraghers.  Finally, the Debtors did receive the benefit of residing at Brendan Avenue and Beaumont Avenue without having to pay rent for part of six years.  In sum, there are insufficient "badges of fraud" present to find that the transfers to the Carraghers constitute fraudulent intent transfers under DCL § 276.  The totality of circumstances surrounding the Debtors' transfers to the Carraghers do not suggest that the Debtors were acting with intent to hinder or delay creditors.

### ii. Constructive Intent Fraudulent Transfers.

However, the Trustee also seeks to have the transfers made to the Carraghers deemed constructive fraudulent conveyances pursuant to DCL § § 273, 273-a, 274  and 275.   Under New York law, a transfer is a constructive fraudulent conveyance if it is made without fair consideration as defined by DCL § 272, and (1) the transferor will be rendered insolvent (DCL § 273), or (2) the transferor is engaged in business and will be left with unreasonably small capital (DCL § 274), or (3) the transferor intends or believes that he or she will incur debts beyond his or her ability to pay them as they mature (DCL § 275).  *In re Manshul Construction Corp.,*  2000 WL 122886 (S.D.N.Y. 2000)  (citing *MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Services Co.,* 910 F. Supp. 913, 936 (S.D.N.Y. 1995)).

"Fair consideration" is defined by DCL § 272 as follows:

Fair consideration is given for property or obligation,

a.  When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b.  When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

According to the Court of Appeals for the Second Circuit, "fair consideration" requires a finding that (1) the recipient either conveyed property in exchange or discharged an antecedent debt in exchange, and (2) such exchange is the "fair equivalent" of the property received, and (3) such exchange was made  in good faith.  *HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1058 (2nd Cir. 1995) ("*HBE Leasing*").   In general, the burden of proving the lack of fair consideration, which is a component of each of the constructive fraud claims, is on the plaintiff.  *United States v. McCombs,* 30 F.3d 310, 324 (2nd Cir. 1994).  However, where the facts regarding the nature of the consideration are within the transferee's control, the burden of proving the fairness of consideration shifts to the transferee.  *Id.* (other citations omitted).  In the case of intra-family transfers, the burden of persuasion can also shift to the transferee if there is an absence of tangible consideration, or if the transfer of the property occurs in a clandestine fashion, designed to conceal the nature and value of the consideration.  *Id.*  at 325.

In the case at bar, the Debtors made the transfers to the Carraghers, who are family members of the Debtors, while the Debtors were subject to the obligations under the Jubilee Stipulation, and while the Debtors had other outstanding obligations to other creditors.  Therefore, the Carraghers  have the burden of establishing that fair consideration was given for the transfers.

14

The Carraghers and the Debtors allege that the transfers they made to the Carraghers were in the nature of repayment of an antecedent debt owed by the Debtors. Neither the Debtors nor the Carraghers have any documentary evidence that the Carraghers previously loaned the Debtors money, and the only evidence as to this arrangement is the self-serving testimony provided by the Debtors and the Carraghers. There is no evidence that the Debtors owed the Carraghers funds at the time of these transfers and the Carraghers have not established that the transfers to them were repayment for an antecedent debt.  Where purported loans are not supported  valid writings to confirm the existence of such debt, and the record as a whole does not support the existence of such debt, oral testimony alone can be insufficient to support a finding that such loans were made.  *In re Fill*, 82 B.R. 200 (Bankr. S.D.N.Y. 1987).  In addition, even if the Court were to find that loans were made from the Carraghers to the Debtors, there is no credible evidence to determine the amount of these loans, beyond the parties' oral testimony.  The only transfers supported by any credible evidence are the transfers by the Debtors to the Carraghers.

The Court also does not find that the arrangement the Debtors had with the Carraghers to live at Brendan Ave. and Beaumont Ave. constitutes fair consideration.   In general, a promise of future support is not considered a fair equivalent of property transferred. *Schmitt v. Morgan,* 98 A.D.2d 934, 936, 471 N.Y.S.2d 365, 367 ( 3rd Dep't 1983).  In *HBE Leasing*, the Court of Appeals for the Second Circuit recognized that the promise of specific future services over a certain period of time can in certain instances constitute a "present advance," when they are of a fixed and definite nature.   61  F.3d at 1061.  However, there is no evidence to suggest that the promise by the Carraghers, if

15

there was one, to permit the Debtors to live at Brendan Ave. and Beaumont Ave. was fixed and definite. In fact, the Debtors testified that they spent several months a year at a relative's home in Florida for some of the years that they lived at the Carraghers' residences. Therefore, any promise to allow the Debtors to live at Brendan Ave. and Beaumont Ave. did not constitute a "present advance."

Having found that there was no present advance by the Carraghers to the Debtors in exchange for the transfers of funds by the Debtors, the Court cannot find that there was "fair consideration" as set forth in DCL § 272. Therefore, the Court need not consider whether the transaction at issue was undertaken in good faith.

The transfers to the Carraghers also constitute constructive fraudulent conveyances under the relevant provisions of the DCL. Under DCL § 273, every conveyance made without fair consideration by a person who is or will be rendered insolvent is deemed fraudulent. What remains to be determined is whether the Debtors were insolvent as a matter of law when each of the transfers to the Carraghers took place.

Under well-settled New York law, a voluntary conveyance made while a debtor is indebted to creditors is presumptively fraudulent. *Matter of Russo*, 1 B.R. 369, 379 (Bankr. E.D.N.Y. 1979) (citing *Feist v. Druckerman*, 70 F.2d 333, 334 (2nd Cir. 1934)). The transferors then have the burden of proving the solvency of the transferor in order to prevent the transfer from being set aside under DCL § 273. *Id*. At the time of these transfers, the Debtors admit to owing debts to several creditors, and the Debtors still had an outstanding obligation under the Jubilee Stipulation. Therefore, in the absence of some proof to the contrary, the Court must presume that the Debtors were insolvent or rendered insolvent at the time of the transfers in question.

16

The Defendants did not offer any proof to show the solvency of the Debtors at the time of any of the transfers to the Carraghers.  This failure alone is sufficient for the Court to find that the Debtors were insolvent at the relevant time periods.  Even if the Court were to review the record on its own, there is insufficient information to determine the solvency of the Debtors either at the time that Ocean Avenue was sold, or at the time the Debtors transferred the $7,000 - $10,000 to make repairs to Brendan Avenue, or in July, 2000 when the last transfer was made towards the purchase of Beaumont Avenue.  Therefore, the Trustee has prevailed on this cause of action and the transfers to the Carraghers shall be set aside under DCL § 273.

The Trustee also seeks to set aside the transfers to the Carraghers under DCL § 273-a, which provides that transfers are deemed fraudulent if they are made for less than fair consideration when the transferor is a defendant in an action for money damages or a judgment has been docketed against the transferor and the transferor has failed to satisfy the judgment.  The Court has already found that the conveyance was made without fair consideration, and at the time of the transfers, Frances Ventimiglia was still subject to the Jubilee Stipulation, which obligated her to make monthly payments to Jubilee.   On July 22, 2002, a judgment was docketed in favor of Jubileee  against Frances Ventimiglia by New York State Supreme Court, Nassau County, in the amount of $17,843.81.   The judgment remained outstanding as of the Petition Date.  Although Frances Ventimiglia did enter into a stipulation of settlement, the settlement was reduced to a judgment, which meets the statutory requirements of DCL § 273-a.  *Lippe v. Bairnco Corp.,* 229 B.R. 598, 604 (S.D.N.Y. 1999).

Having satisfied the requirements of DCL § 273-a, the Court finds that the Trustee is entitled to recover the transfers made to the Carraghers's under this specific section of the DCL as well.

**c. Transfers to Grandchildren**.

The Trustee seeks to recover transfers the Debtors made to their various grandchildren shortly after the sale of Ocean Avenue. In sum, the Debtors invested approximately $16,000 in mutual funds for the benefit of the Debtors' grandchildren. The Debtors assert that the investments were in fact repayment for funds taken by the Debtors from mutual funds previously purchased by Mr. Ventimiglia's father for the benefit of the Debtors' grandchildren. However, there is no documentary evidence to support a finding that the investments represented repayment of loans taken by the Debtors.

In addition to the lack of evidence to support the Debtors' argument that the investments represented repayment of loans taken by the Debtors, there is no evidence that consideration of any kind was paid by the grandchildren; these were clearly gifts by the Debtors.

The Trustee seeks to avoid the Debtors' transfers to their grandchildren under DCL §§ 273, 273-a, 274 and 275. These transfers to the Debtors' grandchildren were made for no consideration, and there is no evidence to support the Defendants' argument that the transfers to the Debtors' grandchildren constituted repayment for loans previously taken by the Debtors. These transfers were made shortly after May 14, 1998, from the sale proceeds generated by the sale of Ocean Avenue. For the same reasons as set forth above regarding the transfers to the Carraghers, the Court finds that the transfers

18

to the grandchildren in the approximate amount of $16,000 are constructive fraudulent conveyances under DCL §§ 273 and 273-a.

**2. Second Cause of Action**.

The Trustee asserts that the Debtors' estate is entitled to an equitable lien or constructive trust on the value of the Net Proceeds transferred to the Carraghers which were used towards the down payment, mortgage payments and any improvements made to Brendan Avenue and Beaumont Avenue. Based on the evidence produced at trial, the total amount of Net Proceeds involved in this cause of action is $52,000 to $55,000.

**a. Equitable Lien**.

Under New York law, an equitable lien "is a right to charge specific property or its proceeds with the payment of a particular debt; it does not give the lienor a possessory interest nor a basis for a possessory action." *In re Tesmetges*, 47 B.R. 385, 389 (E.D.N.Y. 1984) (citing *Goldrick v. Goldrick*, 99 Misc.2d 749, 417 N.Y.S.2d 410, 415 (N.Y. Sup. 1979)) (other citations omitted). Therefore, under this theory, the Debtors' estate could seek imposition of an equitable lien up to the amount of $52,000 to $55,000, but could not be awarded any co-ownership interest in Beaumont Avenue.

Where real property is involved, an equitable lien exists where a party standing in a confidential relationship with the legal owner of the property makes payments of his or her own funds towards the purchase price, reduction of the mortgage or improvements to the real property under circumstances which would entitle that party to restitution. *In re Tesmetges* , 47 B.R. at 389-91; *Goldrick v. Goldrick,* 99 Misc.2d at 756-57. The purpose of this cause of action is to prevent unjust enrichment to the defendant, at the expense of the plaintiff. *Reisner v. Stoller,* 51 F. Supp.2d 430, 453 (S.D.N.Y. 1999).

19

The Court finds that the Trustee has not sustained his burden of proof that the Debtors' estate is entitled to an equitable lien against the sale proceeds of Brendan Avenue or Beaumont Avenue. The Debtors do stand in a confidential relationship with the Carraghers by virtue of the fact that Karen Carragher is the Debtors' daughter. However, there is no evidence that the parties had an agreement or an understanding that the funds transferred to the Carraghers would be held in trust for the benefit of the Debtors or that the funds would some day be reconveyed to the Debtors. There is no evidence that the Debtors assumed any obligations of ownership of Brendan Avenue or Beaumont Avenue, and there is no evidence that an implied agreement existed that the Carraghers held an ownership interest in Brendan Avenue or Beaumont Avenue for the benefit of the Debtors.

The Trustee relies on *In re Tesmetges* for the proposition that even where there is no express agreement between the parties, equity may require the enforcement of a lien upon property. However, the court in *In re Tesmetges* was analyzing facts demonstrating an implied agreement between the parties because of the one-sided nature of the transaction. *Id.* at 389, 390. In addition, the *Tesmetges* court recognized that there must be at least a "tacit" confirmation of an arrangement, such as existed in the *Tesmetges* case where the legal owner received title to property for no consideration and without any obligation to make mortgage payments or to pay property taxes, or where the legal owner abandoned the property and the plaintiff made all of the mortgage and maintenance payments for the upkeep of the property. *Id.,* citing *Towner v. Berg*, 172 N.Y.S.2d 258, 265, 5 A.D.2d 481, 487 (3rd Dep't 1958). No evidence has been submitted that the Debtors did more than assist in making the down payments on the two properties, and

20

pay for one home improvement at Brendan Avenue.  The Debtors did not assume the

obligations of ownership of Brendan Avenue or Beaumont Avenue, nor is there any

evidence that the Debtors believed, and the Carraghers agreed, they were entitled to a

stake in Brendan Avenue or Beaumont Avenue.   The magnitude of the transfers the

Trustee seeks to recover pale in comparison to the type of transfer in *In re Tesmetges*,

where the debtor paid the entire purchase price and assumed all of the obligations

thereunder.  In sum, the facts of this case do not support the existence of a tacit

agreement by  the Carraghers to convey an interest in either property to the Debtors, or to

reimburse the Debtors for their transfers.

### b. Constructive Trust.

The Trustee also seeks a constructive trust on Beaumont Avenue under the same

facts that are applicable to the Trustee's claim for an equitable lien.  For the same reasons

as set forth above, the Trustee's claim under this theory is dismissed. In order to assert a

claim for a constructive trust, there must be a confidential or fiduciary relationship, a

promise or agreement, either express or implied, a transfer in reliance on that agreement,

the breach of that promise, and unjust enrichment at the expense of the transferor.

*Palazzo v. Palazzo*, 121 A.D.2d 261, 263, 503 N.Y.S.2d 381, 383 (1st Dep't 1986), citing

*Sharp v. Kosmalski,* 40 N.Y.2d 119, 121, 351 N.E.2d 721, 386 N.Y.S.2d 72 (1976).

The Trustee argues that the remedy of constructive trust is a flexible remedy, and

New York courts do not require that the facts always fit within the framework of these

four elements.  *Counihan v. Allstate Ins. Co.,* 194 F.3d 357, 362 (2nd Cir. 1999)

("*Counihan*").  However, the Court of Appeals for the Second Circuit has recognized that

imposition of a constructive trust requires at a minimum that the continued holding of the

property in question by the defendant be deemed unconscionable and inequitable, and the return of the property be necessary to prevent unjust enrichment. *Id.* at 361. In *Counihan,* the Court of Appeals for the Second Circuit upheld the decision by the District Court for the Eastern District of New York to impose a constructive trust on insurance proceeds in favor of the United States where the United States had commenced forfeiture proceedings against the plaintiff-appellant, but prior to final entry of the judgment in forfeiture, the property in question was partially destroyed by arson. The District Court did so after concluding that Counihan would be unjustly enriched if she were to receive the benefits of the fire insurance policy. The Court of Appeals for the Second Circuit affirmed this decision despite the fact that the facts of the case did not strictly comply with the accepted test for determining whether imposition of a constructive trust is warranted.

The overall facts of the case before this Court significantly differ from the facts of *Counihan* in that the Carraghers have not been unjustly enriched at the expense of the Debtors. The transactions in question do not cry out for a remedy in equity, nor do they prompt a response that the Carraghers in good conscience cannot retain the transfers.

The Carraghers financed a large portion of the purchase price of Brendan Avenue, and no evidence has been introduced to indicate that anyone but the Carraghers made the mortgage payments on Brendan Avenue. Furthermore, there is no evidence supporting a finding that the Debtors have been contributing towards the mortgage and maintenance costs of Beaumont Avenue to their detriment, yet they have derived the benefit of living at both residences without having to make rent payments.

22

Finally, the Trustee has obtained an adequate remedy at law to recover the funds transferred to the Carraghers as constructive fraudulent conveyances.  Therefore, without any evidence of  an implied or express promise or agreement between the Debtors and the Carraghers, and without a finding that the circumstances in general call for the imposition of a constructive trust, this cause of action cannot be sustained.

### c. Section 363(h) Sale.

The Trustee seeks authorization to conduct a sale of Beaumont Avenue under § 363(h) of the Bankruptcy Code.  However, such authorization cannot be considered if the  Debtors' estate has no legal or equitable ownership interest in Beaumont Avenue. Since these two theories have not been adequately proven by the  Trustee, the Trustee cannot proceed with this cause of action.  Therefore, the second cause of action is dismissed in its entirety.

### 3. Thirteenth Cause of Action.

The Trustee seeks recovery of the cash surrender value of the Life Insurance Policy which is listed in the schedules and to which the Debtors testified at the section 341 meeting.  The Trustee seeks such recovery under Bankruptcy Code § 541, as the Life Insurance Policy constitutes property of the Debtors' estate.  *In re Pied Piper Casuals, Inc.,*  50 B.R. 549, 550-551 (Bankr. S.D.N.Y. 1985)  (citing *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541 (5th Cir. 1983)).  Furthermore, the cash surrender value of such a policy does not constitute exempt funds where one of the debtors is a beneficiary.  *In re Jacobs*, 264 B.R. 274, 293, 294 (Bankr. W.D.N.Y. 2001).

The Trustee is entitled to turnover of the cash surrender value of the Life Insurance Policy under Bankruptcy Code § 542.  Accordingly, judgment shall be entered in the Trustee's favor as to the thirteenth cause of action.

**4. First Cause of Action**.

The Trustee seeks an accounting regarding the various transfers made by the Debtors from the Net Proceeds and an accounting of the source of the mortgage payments and improvements for Brendan  Avenue and Beaumont Avenue, along with an accounting of all transfers made by the Debtors to the non-Debtor defendants named in the Complaint from and including 1995.  However, the Trustee is only entitled to an accounting under certain circumstances.  First, the Trustee must establish an underlying liability to the estate which give rise to the duty to account.  *Wishman v. Genesee-Monroe Racing Ass'n, Inc.,* 43 A.D.2d 785, 349 N.Y.S.2d 1009, 1010 (4th Dep't 1973).  The Trustee  has  prevailed on the fourth cause of action against Karen and Robert M. Carragher, the eighth, tenth and  twelfth causes of action against Karen and Robert M. Carragher, Jacqueline Ventimiglia, Sarah Ventimiglia, Christina Carragher and Robert Carragher, Jr., and on the thirteenth cause of action against the Debtors seeking turnover of the cash surrender value of the Life Insurance Policy.

With respect to the Carraghers, the Trustee has prevailed on his claim to recover the two down payments aggregating $45,000 and the $7,000 - $10,000 spent by the Carraghers on repairs to Brendan Avenue.  The only amount that is not fixed is the total amount spent on repairs to Brendan Avenue.  Therefore, the Trustee is entitled to an accounting from the Debtors and/or the Carraghers setting forth the total amount spent on these repairs.   With respect to the transfers to the Debtors' grandchildren, it appears that

the Trustee has ascertained the amounts of the transfers.  To the extent the Trustee has not, the request for an accounting is granted.  With respect to the cash surrender value of the Life Insurance Policy, the Trustee does not have documentary evidence to establish the amount he is seeking. Therefore, he is entitled to an accounting regarding the current cash value of the Life Insurance Policy.

## CONCLUSION

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § § 1334(a) and (b).  This adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2)(A), (E), (H), (N) and (O).

3.  Pursuant to 11 U.S.C. §§ 544 and 550 and DCL §§273 and 273-a, the Trustee is entitled to recover $45,000 from the Carraghers plus the amounts spent by the Debtors on repairs to Brendan Avenue as constructive fraudulent conveyances.  The Trustee is entitled to an accounting from the Debtors and/or the Carraghers to determine the actual amount the Debtors spent on repairs to Brendan Avenue.

4.   Pursuant to 11 U.S.C. § § 544 and 550 and DCL §§ 273 and 273-a, the Trustee is entitled to recover the funds transferred by the Debtors to their grandchildren as constructive fraudulent conveyances.   To the extent that the Trustee cannot determine with certainty the amount transferred by the Debtors to the grandchildren, the Trustee shall be entitled to an accounting of all funds transferred by the Debtors which were used to purchase mutual funds for the benefit of the Debtors' grandchildren.

4.  Pursuant to 11 U.S.C. §§ 541 and 542, the Trustee is entitled to recover from the Debtors the cash surrender value of the Life Insurance Policy as of the Petition Date,

subject to any relevant insurance laws,  and is entitled to an accounting of same to determine the actual value as of the Petition Date.

    5.  The remaining causes of action are denied.

So Ordered.


Dated: Central Islip, New York
      February  27, 2007                 By: _**/s/ Dorothy Eisenberg**_____
                                      U.S.B.J.